UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANARD MASSEY, JR.,

        Petitioner,

v.                                            CASE NO. 05-71209
                                            HONORABLE GEORGE CARAM STEEH

SHERRY L. BURT,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Ranard Massey, Jr., has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state convictions for murder and possession of a firearm during the commission of a felony (felony firearm). Petitioner alleges that his statement to the police was involuntary and that the prosecutor's closing argument deprived him of due process. The latter claim is procedurally defaulted, and the former claim does not warrant habeas relief because the state appellate court's adjudication of the claim was objectively reasonable. Therefore, the habeas petition must be denied.

### I. Background

Petitioner was charged in Wayne County, Michigan with first-degree (felony) murder and felony firearm. The trial court summarized the facts leading to these charges as follows:

> On or about September 1st of [2000] at 753 Marlborough, Waymon Jackson, who was the type of individual . . . everyone in any neighborhood would want as a neighbor, . . . was shot approximately ten times and robbed of approximately four hundred dollars, which was split between Mr. [Justin] Perryman and Mr. Massey.
>
> Mr. Massey kept the gun, the rifle, that was used to murder Mr. Jackson. And he gave the gun, brought the gun to Mr. Perryman to use in the murder.

> Both Mr. Massey and Mr. Perryman lied in wait underneath Mr. Jackson's porch waiting for him to come from cashing his social security check.
>
> Perryman, upon Mr. Jackson's arrival jumps up and shoots Mr. Jackson three times. Mr. Jackson is screaming for help. Perryman apparently . . . did fire more shots. And then Mr. Massey went over there and fired at least a couple shots at the helpless Mr. Jackson.
>
> They took off . . . .
>
> They went over to Mr. Massey's uncle's house where Mr. Massey gave Perryman a hundred to two hundred dollars, which were the proceeds of this murder.

(Tr. Aug. 16, 2001, at 8-9.)

The subsequent events were summarized by the Michigan Court of Appeals:

> Several neighbors identified the shooter as Justin Perryman, who was the victim's stepson or godson and had cut the victim's grass. Three other young men were observed running from the yard after the shooting, and a witness provided general descriptions of the young men. Shortly after the shooting, the police went to arrest Perryman at his home. [Mr. Massey] was with him. Noting that [Mr. Massey] matched the general description of one of the individuals seen running from the yard, and having been advised that [Mr. Massey] was with Perryman all day, the police arrested [Mr. Massey] along with Perryman.
>
> Perryman later pleaded guilty to second-degree murder and felony-firearm and, in exchange for a three-year reduction of his thirty-year minimum sentence and a letter in his prison file detailing his cooperation, he agreed to testify against [Mr. Massey] at [Mr. Massey's] trial. The gist of Perryman's testimony was that he and [Mr. Massey] waited for the victim to return home and ambushed him in his backyard. Perryman acknowledged doing most of the shooting, but claimed that he also placed the gun in [Mr. Massey's] hands and that [Mr. Massey] fired the gun in the victim's direction a few times.

*People v. Massey*, No. 237775 (Mich. Ct. App. Sept. 30, 2003). Petitioner's defense was that Perryman was not a credible witness and that Perryman's testimony was not corroborated by any physical evidence.

On July 20, 2001, a Wayne County circuit court jury found Petitioner guilty in Count I of

2

the lesser charge of second-degree murder, MICH. COMP. LAWS § 750.317, and guilty in Count II of felony firearm, MICH. COMP. LAWS § 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of twenty to forty-five years for the murder. The Michigan Court of Appeals affirmed Petitioner's convictions, *see* Mich. Ct. App. No. 237775, and on May 28, 2004, the Michigan Supreme Court denied leave to appeal. *See People v. Massey*, No. 125024 (Mich. Sup. Ct. May 28, 2004).

Petitioner filed his habeas corpus petition on March 29, 2005. The grounds for relief are:

I. Petitioner Massey was deprived of his liberty without due process of law and denied his constitutional right to a fair trial where [the] trial court erred by failing to suppress his custodial statements, which were obtained following his illegal arrest; and

II. Petitioner Renard Massey was deprived of his right to due process and a fair trial guaranteed under the United States Constitution where the prosecutor in his argument to the jury (1) interjected his own personal knowledge and opinion as to the guilt of Petitioner Massey and vouched for the credibility of his witnesses and (2) purposely interjected facts not in evidence to the jury during his closing argument.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

3

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

> The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Instead, it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Id*. A state court moreover does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent; it may hold a view that is different from [the Sixth Circuit Court of Appeals] or another federal court. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam). Ultimately, AEDPA's highly deferential standard requires that this court give the state-court decision "the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

*Slagle v. Bagley*, 457 F.3d 501, 513-14 (6th Cir. 2006), *cert. denied*, __ S. Ct. __, 2007 WL 1172856 (U.S. June 18, 2007) (No. 06-10659).

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, review is conducted in light of the law as it existed at the time of the final state court decision, *Teague v. Lane,* 489 U.S. 288 (1989), unless an intervening constitutional decision announces a "watershed" rule of criminal law with implications for the fundamental fairness of the trial proceeding. *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

4

## III. Discussion

### A. Petitioner's Custodial Statements to the Police

#### 1. The Fourth Amendment Claim

The first habeas claim alleges that the police lacked probable cause to arrest Petitioner in a private residence and, therefore, the trial court should have suppressed Petitioner's pretrial statements to the police. Petitioner asserts that his case "turns on the Fourth Amendment rule that a confession 'obtained by exploitation of an illegal arrest' may not be used against a criminal defendant." Brief in Support of Habeas Pet., at 8 (quoting *Brown v. Illinois*, 422 U.S. 590, 603 (1975)).

The Supreme Court has held that, when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). For a "full and fair" opportunity to have existed, "the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (1985) (citing *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner filed a pretrial motion to suppress his statement. The trial court held an evidentiary hearing and then denied the motion. The trial court stated that the arresting officers had probable cause to arrest Petitioner based on reasonably trustworthy information, which was sufficient to warrant a prudent person in believing that Petitioner had committed a felony. (Tr. Dec. 18, 2000, at 131.) The Michigan Court of Appeals agreed with the trial court that there was

probable cause supporting Petitioner's arrest. The Michigan Supreme Court also had an opportunity to review Petitioner's claim.

Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court. Therefore, this Court is not required to consider the substantive merits of his claim.

### 2. The Fifth and Sixth Amendment Claims

Petitioner alleges that his statements to the police also were obtained in violation of the Fifth and Sixth Amendments to the Constitution. Petitioner asserts that he was under the influence of drugs and alcohol and that the police used coercive tactics to extract his statements.

#### a. Legal Framework

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The following procedural safeguards must be employed "unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it." *Id*.

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning.

*Id.* at 444-45.

"No single litmus-paper test for constitutionally impermissible interrogation has been evolved." *Culombe v. Connecticut*, 367 U.S. 568, 601 (1961). Factors that may be considered

are:  extensive cross-questioning by the police, undue delay in the arraignment, failure to caution a prisoner, refusal to permit communication with friends and legal counsel, the duration and conditions of detention, the attitude of the police toward the suspect, the suspect's physical and mental state, and pressures which influence the suspect's powers of resistance and self-control. *Id*. at 601-02.  "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  "A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege."  *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Miranda*, 384 U.S. at 444).

### b.  The Facts as Established at the State Evidentiary Hearing

Petitioner was sixteen years old when the police interrogated him, and he had completed at least eight years of schooling.  He claims that he had been drinking alcohol and smoking marijuana shortly before his arrest and interrogation and that his father's request for an attorney was ignored.

Investigator Dwight Pearson testified at the state evidentiary hearing that he advised Petitioner of his constitutional rights on September 1, 2000, at approximately 9:40 p.m. Petitioner placed his initials next to each constitutional right and signed the waiver-of-rights form.  Petitioner's father was present during the interview, and the senior Mr. Massey encouraged Petitioner to tell the complete story.  Petitioner appeared to understand Officer Pearson, and he showed no signs of being under the influence of alcohol or narcotics.  Both Petitioner and his father looked over the statement, appeared to read it, and signed it.

7

Investigator Pearson claimed that he did not promise Petitioner anything for his statement, and he did not threaten either Petitioner or his father or use force on them.

Police Officer Derryck Thomas testified that he interviewed Petitioner around midnight that same night after investigating the crime scene. Petitioner's father was present. Officer Thomas informed Petitioner of his constitutional rights. Petitioner read the rights out loud and signed the waiver-of-rights form. He claimed to understand his rights, and at no point did he appear to be intoxicated or under the influence of narcotics. Petitioner was able to provide personal information about his family and himself, and he made appropriate responses. At the conclusion of the statement, Officer Thomas asked Petitioner and his father to read the statement and to sign it if they agreed with it. Both Petitioner and his father signed the statement, and neither one requested an attorney. Nor did they ask Officer Thomas not to speak with them anymore. Officer Thomas did not promise Petitioner or his father anything, and he did not threaten Petitioner or hit him.

Dr. Anthony Kealing performed a clinical examination of Petitioner several months after Petitioner was interrogated by the police. Dr. Kealing testified that Petitioner had the ability to read the constitutional rights form, as well as, the ability to understand and waive his rights. Petitioner informed Dr. Kealing that he had smoked marijuana and consumed alcohol throughout the day of the crime. However, Dr. Kealing concluded that was normal conduct for Petitioner and that the substance abuse did not interfere with Petitioner's day-to-day activities, nor impact his ability to understand his constitutional rights. Dr. Kealing was unable to ascertain the truthfulness of Petitioner's claim that his interrogators had beat him, but Petitioner stated that he was not treated or hospitalized for the beating and that he had no broken ribs or bruises.

Petitioner's cousin, sister, and father testified for the defense. His cousin, Carlos Massey, testified that he saw Petitioner between 4:30 and 6:00 p.m. on September 1, 2000. Petitioner had smoked a little marijuana and had drunk some liquor before Carlos saw him. Petitioner also smoked marijuana and drank a little liquor in Carlos' presence. Petitioner's eyes were red, and he looked a little shaky.

Petitioner's sister, Letitia Garret, testified that she saw Petitioner about 7:00 or 8:00 p.m. on the same day. She observed Petitioner drinking out of a half-empty Hennessy bottle. He was drinking during the twenty to twenty-five minutes in which he was present at her house. Petitioner appeared drunk when he left the house. His eyes were red, and he was stumbling and acting "crazy."

Petitioner's father, Raymond Massey, Sr., testified that he informed Investigator Pearson that he would like to have an attorney, but Pearson told him that he did not care about Petitioner having an attorney, just as Petitioner and Justin Perryman had not cared about Mr. Jackson. Mr. Massey claimed that he and Investigator Pearson argued for approximately fifteen minutes and that Pearson threatened to send Petitioner to the county jail, where he could be raped and possibly murdered, if he did not sign a statement. Mr. Massey also testified that his son had an odor of alcohol, was slurring his speech, and was falling asleep.

Mr. Massey claimed that he went home after the first statement, but was called back downtown about two hours later when Officer Thomas said his son wanted to change his statement. Mr. Massy thought that the second statement was merely more legible than the first statement.

### c. The Trial Court's Decision

9

The trial court made the following findings of fact:

> [O]n September 1 of the year 2000, Ranard Massey, Jr. was arrested and held in custody by the Detroit Police Department.
>
> A approximately 9:40 p.m., Ranard Massey, Jr. was interviewed by Investigator Pearson of the Detroit Police Department Homicide Unit.
>
> Ranard Massey, Jr. was informed of his constitutional rights in the presence of his father, Ranard Massey, Sr. The defendant initialed the constitutional rights certificate of notification form next to the five statements which indicate his rights.
>
> The defendant advised the officer that he understood his rights under the law. This was witnessed not only by the defendant, but also his father, Ranard Massey, Sr.
>
> Investigator Pearson informed Ranard Massey, Sr. regarding the interview process as well as the various consequences of the defendant speaking to the police and giving a statement.
>
> The defendant did not appear to be intoxicated. The interview regarding the statement took place in front of Ranard Massey, Sr. There were no threats, no force.
>
> The statement was taken from the defendant in the presence of his father and both Ranard Massey, Jr. and Ranard Massey, Sr. signed the statement upon completion of the statement.
>
> Both Ranard Massey, Jr. and his father reviewed the statement prior to signing the statement indicated in Exhibit Number Two. No promises were made to the defendant nor his father.
>
> Subsequently, at about 12:02 a.m. on September 2nd of the year 2000, Mr. Massey was against (sic) seen by the Detroit Police, in particular Officer Derryck Thomas.

>He was advised of his constitutional rights. His father, Ranard Massey, Sr. was contacted and he came back to 1300 Beaubien, homicide section.
>
>Mr. Massey was again read his constitutional rights as indicated on the constitutional rights certificate of notification form and affirmed that he understood his rights.
>
>Mr. Massey can read and understand his rights. Mr. Massey, Sr. was present prior to the giving of the rights as depicted on People's Exhibit Two and was present during the defendant's second statement to the Detroit Police.
>
>In fact, the defendant and his father, Ranard Massey, Sr. signed all seven pages of the second statement as referred to in People's Exhibit Number Five.
>
>Mr. Massey, the defendant, at no time showed intoxication, i.e., sleepiness, inattentiveness, slurring of words, alcohol on breath.
>
>Neither the defendant nor his father, Ranard Massey, Sr., asked for a lawyer at any time before, during or after the making of the two statements.
>
>Ranard Massey, Jr. and Ranard Massey, Sr. reviewed both statements before the statements were signed. Further, Mr. Massey, per the testimony of Mr. Kealing, was competent to waive his constitutional / his Miranda rights.

(Tr. Mar. 16, 2001, at 4-6.)

The trial court concluded from the totality of the circumstances that Petitioner's statements were voluntarily made. In reaching this conclusion, the Court considered Petitioner's age, his personal background and educational level, his intelligence level, his previous dealings with the police, the lack of a repeated and prolonged investigation, the lack of a lengthy detention, and the lack of any unnecessary delay in bringing the defendant before a Magistrate. The trial court also took into consideration the presence of Petitioner's father during the advice of rights and the taking of both statements and the fact that both Petitioner and his father claimed

11

to understand the rights and their consequences.  The court noted the lack of credible indications that Petitioner was intoxicated, drugged, in poor health or deprived of sleep, food, or medical attention.  The court also found no credible evidence of physical abuse, threats, or promises.  (*Id*. at 7-8.)

### d.  The State Appellate Court's Decision

The Michigan Court of Appeals noted that the only evidence of police coercion was the testimony of Petitioner's father.  The court of appeals noted that the senior Mr. Massey's testimony

> was contradicted by the testimony of Investigator Pearson, who testified that [Petitioner's] father was present the entire time, that [Petitioner] was willing to give a statement, that [Petitioner] had completed the eighth grade and appeared to understand his rights, and that Pearson did not threaten either [Petitioner] or his father, use any force, or make any promises to either one.  Similarly, Investigator Derryck Thomas testified that [Petitioner's] father was present throughout the two-hour second interrogation, and that Thomas did not promise anything to either [Petitioner] or his father or threaten either of them.

*Massey*, Mich. Ct. App. No. 237775, at 3-4.  The court of appeals deferred to the trial court's opportunity to judge the credibility of the witnesses before it.  The court of appeals concluded that the trial court did not err in determining that there was no police coercion associated with Petitioner's statements and that Petitioner knowingly and intelligently waived his constitutional rights.

### e.  Analysis

This Court also is required to give special deference to a trial court's resolution of credibility issues.  *Patton v. Yount*, 467 U.S. 1025, 1038 (1984).  Although Petitioner's relatives

claimed that Petitioner had been drinking and smoking marijuana on the day of his arrest, the interrogating officers stated that Petitioner did not show signs of being under the influence of alcohol or narcotics. The officers' testimony was supported by Dr. Kealing's testimony that the amount of intoxicants Petitioner allegedly consumed was normal for him and did not affect his ability to understand his rights or his ability to function.

Dr. Kealing was unable to confirm Petitioner's allegations that he had been beaten, but Petitioner admitted that he had no bruises as a result of the alleged beating. It is noteworthy that Petitioner's father said nothing about the police beating his son.

The senior Mr. Massey did testify that the police threatened to send his son to jail if he did not cooperate, but that testimony is contradicted by Investigator Pearson's testimony that Mr. Massey encouraged his son to "tell it all" and not "get caught up by yourself." Moreover, Petitioner signed the constitutional rights form before both interviews and, according to Dr. Kealing, he understood what it meant to be threatened or promised something for his statement.

Petitioner has not clearly and convincingly rebutted the presumption accorded the state court's factual findings. 28 U.S.C. 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, __, 126 S. Ct. 969, 974 (2006). Although he claims that neither the trial court, nor the court of appeals provided any reasons for finding his father not credible, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). The state courts' factual determinations were reasonable and their legal conclusions did not result in decisions that were contrary to, or unreasonable applications of, Supreme Court precedent.

### f. Harmless Error

Harmless error analysis applies to erroneously admitted coerced confessions. *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991). The test on habeas review of constitutional errors is whether the error had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This test applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness . . . ." *Fry v. Pliler*, __ U.S. __, __, 127 S. Ct. 2321, 2328 (2007).

Petitioner's statements to the police were an important part of the prosecution's case,[1] but they were not the only evidence against Petitioner. Justin Perryman testified that he convinced Petitioner to go to Mr. Jackson's house to rob and murder Jackson because Jackson thought they had something to do with breaking and entering his home on a prior occasion. Petitioner stalled at first, but then agreed to help Perryman. The two of them acquired a rifle and hid under Mr. Jackson's porch while they waited for Jackson to arrive home from cashing his disability check. Perryman testified that, when Mr. Jackson came home, he (Perryman) climbed out from beneath the porch and shot Mr. Jackson multiple times with the rifle. Petitioner then took the gun and fired it a couple of times toward the truck where Mr. Jackson was standing. Perryman grabbed the gun again and shot at Jackson three or four more times. Perryman thought that some money was taken from the victim, because Petitioner later gave him about $100.

In light of Perryman's testimony, Petitioner's statement to the police could not have had

---

[1] In his statements, Petitioner "acknowledged accompanying [Justin] Perryman to the victim's house. He admitted intending to rob him, but denied firing any shots. In the second statement, [Petitioner] admitted taking the victim's wallet after he had been shot." *Massey*, Mich. Ct. App. No. 237775, at 2.

14

a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Thus, even assuming that the trial court erred in admitting Petitioner's statement to the police, the constitutional error was harmless.

### B. The Prosecutor

The second and final habeas claim alleges prosecutorial misconduct during closing arguments. Petitioner alleges that the prosecutor interjected his personal opinion of Petitioner's guilt in closing arguments and vouched for the credibility of his witnesses. Petitioner further alleges that the prosecutor used Justin Perryman's guilty plea as substantive evidence of his (Petitioner's) guilt and mischaracterized the law on accomplice testimony.

Respondent argues that this claim is procedurally defaulted. A procedural default is "a critical failure to comply with state procedural law . . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Federal courts may not consider procedurally defaulted claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants to make a timely and specific objection at trial to preserve a claim for appellate review. *See People v. Carines*, 460 Mich. 750, 761-64; 597 N.W.2d 130, 137-38 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). Petitioner violated this rule by not objecting to the prosecutor's remarks during trial. The Michigan Court of Appeals enforced the rule by reviewing Petitioner's claim for plain error. The court of appeals

15

stated that the claim was not preserved for appellate review because Petitioner did not object to the alleged misconduct at trial. A state appellate court's review for plain error constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

The contemporaneous-objection rule was an adequate and independent state ground for denying relief because it was firmly established and regularly followed before Petitioner's trial in 2001. Therefore, in order for this Court to consider the substantive merits of Petitioner's prosecutorial-misconduct claim, Petitioner must establish "cause and prejudice" or a "miscarriage of justice."

Petitioner alleges that, if the Court determines trial counsel's failure to object is controlling, then the Court should find that counsel committed a grave error and violated Petitioner's Sixth Amendment right to effective assistance. Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but the doctrine of exhaustion of state remedies "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986).

Petitioner conceded in his state appellate brief that his trial attorney failed to object to the prosecutor's arguments. However, Petitioner did not allege ineffective assistance of counsel as an independent claim in state court. He merely argued that the state appellate court could reverse his conviction in the absence of an objection where the prosecutor's argument was laced with repeated attempts to prejudice him in the jury's eyes. Because Petitioner did not raise his attorney's alleged ineffectiveness as an independent claim in state court, his attorney's failure to object to the prosecutor's arguments cannot be used to establish "cause" for Petitioner's

16

procedural default. The Court need not determine whether Petitioner was prejudiced as a result of the alleged error because he has not shown "cause." *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) ("When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice.").

A petitioner may overcome a procedural default in the absence of "cause and prejudice" upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). This exception for miscarriages of justice applies in the extraordinary case where the habeas petitioner demonstrates that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. at 388; *Carrier*, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup*, 513 U.S. at 327. Stated differently, the petitioner must show that, in light of new evidence, it is "more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, __ U.S. __, __, 126 S. Ct. 2064, 2077 (2006).

Petitioner has not supported his claims with any new evidence of actual innocence. Accordingly, a miscarriage of justice will not occur as a result of the Court's decision not to adjudicate the substantive merits of Petitioner's second claim.

### IV. Conclusion

Petitioner's prosecutorial-misconduct claim is procedurally defaulted, and his Fourth Amendment claim is not cognizable on habeas review. Petitioner's other constitutional

17

challenges to his confessions lack merit, because the state court's adjudication of those claims was not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the habeas petition is DENIED.

Dated: July 3, 2007

            S/George Caram Steeh
            GEORGE CARAM STEEH
            UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 3, 2007, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---